THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ERIC J. DEPAOLA, | ) | Civil Action No. 7:12-cv-00592 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| VIRGINIA DEPARTMENT | ) | |
| OF CORRECTIONS, <u>et</u> <u>al.</u>, | ) | By: Samuel G. Wilson |
|     Defendants. | ) | United States District Judge |

This is an action by Eric J. DePaola, an inmate at Red Onion State Prison ("Red Onion") proceeding *pro se*, against the Virginia Department of Corrections ("VDOC") and ten of its employees in their individual and official capacities (collectively "Defendants"), pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et seq.* and pursuant to 42 U.S.C. § 1983 for alleged violations of his First and Fourteenth Amendments. DePaola, who is a frequent and sometimes abusive litigant,[1] claims Defendants

---

[1] Though DePaola may not qualify as a "three striker," he nevertheless is an abusive filer. He has filed five lawsuits naming a total of 45 defendants. In the first, he alleged he was the victim of excessive force by prison guards and named eleven defendants. <u>DePaola v. Taylor</u>, 7:12 CV 398. It became apparent at trial that DePaola committed perjury to have his day in court and that he, in fact, had attacked one of the defendant officers with a shank and may have taken that officer's life had defendants not reacted with force. The jury found against him, and undaunted, DePaola appealed. The Court of Appeals affirmed, and DePaola unsuccessfully sought rehearing and rehearing *en banc*. <u>DePaola v. Taylor</u>, No. 11-7631.
    While that claim was pending, DePaola filed a second suit claiming that five defendants violated his First Amendment rights by denying him access to certain publications, one of which discussed "successfully delivering 'U- lock justice'" in reference to the use of a 2-5 pound piece of steel, originally intended to function as a bicycle lock, to vandalize a vehicle or to physically injure a person. <u>DePaola v. Flemming</u>, No. 7:10-cv-00561. While his first two cases were still pending, DePaola filed a third arising out of his failure to receive his meals before sunrise and after sunset during Ramadan in 2010 following his refusal to demonstrate his sincerely held religious beliefs by simply showing (as he easily could have) that he possessed a Quran. <u>DePaola v. Wade</u>, No. 7:11-cv-00198. While his third lawsuit was pending, DePaola filed a fourth raising

violated his rights by screening him for tuberculosis with purified protein derivative injection ("PPD test") that contains alcohol, failing to provide common fare foods that meet religious requirements, serving him food in unsanitary conditions in violation of his religious requirements, and denying him feast meals for Eid-ul-Adha and Christmas. Defendants have moved for summary judgment. The court grants Defendants' motion as to DePaola's claims related to the feast meals and takes the remaining claims under advisement pending the submission of further information from Defendants.

I.

A.

DePaola alleges that he has been a practicing Muslim for over five years and has been following the teachings of the Nation of Islam for approximately three years, (Compl. at ¶ 20, ECF No. 1.), and that he has a religious objection to the PPD test Red Onion administers because of the "substances contained in the injection serum." (Id. at ¶ 40.) He nonetheless submitted to one on March 8, 2012, but claims he only did so to avoid disciplinary action and segregation during showers and recreation. In support of their motion for summary judgment, Defendants filed an affidavit from the Warden of Red Onion, Randall Mathena, stating medical staff has apprised him that "there is no substance in the PPD skin test solution that would violate DePaola's religious beliefs."[2] (Mathena Aff. at ¶ 4, ECF No. 20-1.) According to Mathena, all

---

a host of claims, including claims relating to the exercise of his religious beliefs; DePaola named 13 defendants. DePaola v. Ray, No. 7:12-cv-139.
 DePaola filed the present action during the pendency of his fourth case. Through much of this time DePaola has been on the common fare diet, yet his current claim that his diet fails to meet his religious dietary needs did not emerge until this, his fifth lawsuit.
 [2] Defendants have not identified what substances the PPD skin test solution actually contains in this case. The court notes, but does not rely upon, a previous affidavit from Canada v. Ray, No. 7:08-cv-00219, 2011 WL 565611 (W.D. Va. Feb 9, 2011), submitted by Dr. Scott Gronert, the Chairman of the Chemistry Department at Virginia Commonwealth University,

Red Onion inmates and staff are subject to an annual PPD test[3] and inmates who refuse the PPD test are subject to "administrative segregation and appropriate disciplinary action."[4] DePaola responds that Red Onion should use other acceptable alternatives to screen him for tuberculosis (e.g. x-ray and sputum test) and reiterates his belief "that the PPD solution contains alcohols and other substances which are toxic and/or violate his religious requirement to not introduce harmful substances into his body." (DePaola Declaration at ¶ 17, ECF No. 23-1.)

**B.**

DePaola complains that the food he receives as part of the common fare diet violates his religious beliefs. DePaola requested and persisted in his efforts to receive the common fare diet at Red Onion based upon his Muslim beliefs, for which VDOC granted approval on September 20, 2011. The common fare diet DePaola requested and now receives contains, among other things, white bread, peanut butter, cottage cheese, grapefruit, and white rice. DePaola alleges it also includes products containing peas. Because of these foods, DePaola complains the common fare diet fails to meet his religious dietary requirements. (Compl. at ¶ 25, ECF No. 1.) Defendants have submitted an affidavit from Mark Engelke, Director of Food Services for VDOC, stating the common fare diet is designed to meet the dietary needs of inmates who, for

---

stating that phenol (a compound in the PPD test solution) does not constitute alcohol under the definition promulgated by the International Union of Pure and Applied Chemists. Id. at 2. According to Dr. Gronert, "alcohol" in layman's terms, actually refers to ethyl alcohol and does not share the same chemical composition as phenol. Id.

[3] DePaola has been at Red Onion since at least 2010. In his previous four suits, all filed while at Red Onion, he has not alleged any issue with the PPD test even though, based on the policy, he would have received them.

[4] Defendants do not explain the reasons for their policy of annual tuberculosis screening, why they use the injection PPD test, or the feasibility and availability of other options. The court takes judicial notice, however, that tuberculosis is a potentially serious, contagious bacterial infection of the lungs that may remain dormant for years, but can be treated upon detection. *Medline Plus: Pulmonary Tuberculosis*, NATIONAL INSTITUTE OF HEALTH, http://www.nlm.nih.gov/medlineplus/ency/article/000077.htm (last updated Nov. 10, 2012).

religious reasons, require a Kosher, non-pork diet and whose dietary requirements cannot be accommodated with foods provided by the Master Menu, and that, according to the Islamic Center of Virginia, it meets Islamic dietary guidelines. (Engelke Aff. at ¶ 4&7, ECF No. 20-1.) Defendants also submitted the affidavit of the Food Operations Director at Red Onion, P. Scarberry. According to Scarberry, "only authorized food items are served on the Common Fare menu" and peas are not among them.[5] (Scarberry Aff. at ¶ 5, ECF No. 20-1.)[6] DePaola responded that cottage cheese contains Polysorbate 80 and that "Vegan Beef Flavored Rice & Vegetable Dinner with Black Beans" contains peas. He also has submitted a document from an unknown source that states Polysorbate 80 is "an organic compound of acids and alcohols," (Pl. Exhibit G, ECF No. 23-2), and he submitted a food label for the vegan meal that lists peas as an ingredient, (Pl. Exhibit F, ECF No. 23-2), though he has not connected this label specifically to his claims.

The court cannot discern from the parties' submissions whether, before initiating this lawsuit, DePaola informed Defendants about the religious dietary restrictions he now claims and, if so, whether Defendants made any attempts to respond to or address his concerns.[7]

## C.

DePaola also complains about the condition of the food he has received "on several occasions," including rotten fruits or vegetables, molded bread, and inadequate portions of certain foods, (Compl. at ¶ 6-9, ECF No. 1), and he makes several general complaints related to

---

[5] Certain foods are authorized at any time of the year, such as: Kosher bread, Brown rice, and cottage cheese made without pork. (Id.) Other authorized foods may not be served during the Nation of Islam month of fasting, including white bread, peanut butter, and grapefruit.

[6] Defendants do not otherwise address DePaola's complaints about specific foods. They also do not provide information about the quantity of the foods DePaola complains of relative to the remainder of his food and how frequently these foods are on the common fare menu.

[7] DePaola has not submitted a copy of any grievance that mentions his complaints about the inclusion of specific items on the common fare menu.

unsanitary food trays, food trays being pushed from the kitchen on unrefrigerated carts, and officers failing to change their gloves after touching unsanitary surface. DePaola asserts that eating such food offends his religious beliefs that he must eat a meal that is "prepared with fresh ingredients . . . and served in a sanitary manner." (Compl. ¶ 36, ECF No. 1.) According to Scarberry's affidavit on these issues, "fruits and vegetables are thoroughly scrubbed," spoiled foods are discarded, and food is served using premeasured ladles and weighing "to ensure adequate food portions." (Scarberry Aff. ¶ 6, 8, ECF No. 20-1.) Scarberry's affidavit continues that common fare trays "are placed in a clean and sanitized dishwasher," and the food preparation area and food temperature are continually monitored. (Scarberry Aff. at ¶ 6-9, ECF No. 20-1.)

DePaola is kept in segregation because of his unruly behavior. According to the Warden, officers "assigned to special housing units such as segregation . . . are provided gloves to wear during the delivery of food trays," and "[o]fficers may change gloves should they become contaminated."[8] (Mathena Aff. at ¶ 5, ECF No. 20-1.) DePaola has responded with his own sworn declaration and the sworn declarations of other inmates that "the common fare trays are often prepared and served in an unsanitary manner, often with rotten fruits and vegetables," (Declaration of R.J. Boone, ECF 23-2), and he has appended as exhibits two grievance documents reflecting occasions when officers replaced food after DePaola complained. (Pl. Exhibit H, I, ECF No. 23-2.)

D.

---

[8] According to Mathena's affidavit, "[o]fficers serving food trays are not required to receive training since they do not participate in the actual food preparation," but they are instructed to deliver food trays promptly. (Mathena Aff. at ¶ 6, ECF No. 20-1.)

Finally, DePaola complains of two instances in which he did not receive food that he actually wanted. On both occasions, DePaola received the regular common fare tray instead of feast meals. On November 7, 2011, DePaola alleges Defendants denied him the Eid-ul-Adha feast, a feast based on the Muslim holiday.[9] DePaola asserts his religious beliefs require him to participate in the Eid-ul-Adha feast, and when he notified a correctional officer that he should have received the feast meal, the officer responded that "the feast meal was on regular trays and not the common fare trays." (Compl. ¶ 53-4, ECF No. 1.) Defendants contend DePaola refused the Eid-ul-Adha feast and DePaola has responded with several sworn declarations to the contrary. (Declaration of DePaola at ¶ 12, ECF No. 23-1; Pl. Exhibits J-L, ECF No. 23-2.)

DePaola also complains that he did not receive the Christmas feast on December 25, 2011, which he alleges violates his religious belief that he must honor all of God's prophets, including Jesus. (Compl. at ¶ 60, ECF No. 1.) DePaola does not state why he could not honor Jesus on Christmas in some other way, for example, by using the common fare meal he received on that day. DePaola further complains that all inmates are permitted to participate in the two Muslim feasts, but common fare recipients cannot partake in the Christmas feast without threat of being removed from the common fare diet, even though the feasts all contain the same food. (Compl. at ¶ 65-6, ECF No. 1.) According to Engelke's affidavit, Red Onion does not serve the Christmas feast to common fare participants because it is not prepared in the manner the common fare meals require.[10] (Engelke Aff. at ¶ 9, ECF No. 20-1.)

## II.

---

[9] The Eid-ul-Adha feast meal consisted of two pieces of fish, one cup fried rice, one piece of cornbread, one cup of fried cabbage, mustard, cake, and two cookies. (Compl. ¶ 51, ECF No. 1; Scarberry Aff. at ¶ 4, ECF No. 20-1.)

[10] The Christmas feast is not prepared in a designated area with separate utensils and serving trays. (Engelke Aff. at ¶ 9, ECF No. 20-1.)

On summary judgment, the court views the facts and draws inferences in the light most favorable to the party opposing the motion. See Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). The court need not, however, treat the Complaint's legal conclusions as true. See, e.g., Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996) (stating a court need not accept plaintiff's "unwarranted deductions," "footless conclusions of law" or "sweeping legal conclusions cast in the form of factual allegations") (internal quotations and citations omitted); Estate Constr. Co. v. Miller & Smith Holding Co., Inc., 14 F.3d 213, 217-18 (4th Cir. 1994). The court may grant summary judgment where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586–587 (1986) (footnote omitted).

## A.

DePaola claims Defendants violated his rights under RLUIPA to be free from a substantial burden on his religious exercise by failing to serve him two feast meals. The court finds otherwise and grants Defendants' motion for summary judgment as to these claims.

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution."[11] 42 U.S.C. § 2000cc-

---

[11] RLUIPA "incorporates" the free exercise clause of the First Amendment, and DePaola's burden to state a claim under the First Amendment is very similar to his burden under RLUIPA. Lovelace v. Lee, 472 F.3d 174, 198-99, n.8 (4th Cir. 2006); Hernandez v. Comm'r,

7

1(a). An exception to that standard exists when the government establishes the imposition of a burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." Id. The plaintiff bears the initial burden of showing a substantial burden on his religious exercise. 42 U.S.C. § 2000cc-2(b); Lovelace v. Lee, 472 F.3d 174, 185-87 (4th Cir. 2006). A "substantial burden" exists where the adherent is truly pressured "to significantly modify his religious behavior and significantly violate his religious beliefs." Lovelace, 472 F.3d at 187 (quoting Adkins v. Kaspar, 393 F.3d 559, 570 (5th Cir. 2004)). Moreover, negligence does not state a claim under RLUIPA. See id. at 194 (finding that RLUIPA does not reach negligent violations of inmates' religious practices and noting "[a]doption of the negligence standard would open prison officials to unprecedented liability for burdening an inmate's religious exercise"). And the court will "not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety." Cutter v. Wilkinson, 544 U.S. 709, 722 (2005).

DePaola fails to plausibly show a RLUIPA violation based on missing the Eid-ul-Adha feast on one occasion. DePaola maintains he was denied the feast meal – and was instead provided a non-feast meal – because a correctional officer incorrectly told him that Red Onion was not offering the Eid-ul-Adha feast on common fare trays. Assuming DePaola's allegations are true, the officer's mistake, at most, amounts to mere negligence and does not state a claim under RLUIPA. DePaola nevertheless fails to show how missing one feast meal rises to the level

---

490 U.S. 680, 699 (1989). Contrary to the level of scrutiny under RLUIPA, for First Amendment purposes, a prisoner's free-exercise rights may be restricted to the extent that prison policy is "reasonably adapted to achieving a legitimate penological objective." Lovelace, 472 F.3d at 200 (quoting Young v. Coughlin, 866 F.2d 567, 570 (2nd Cir. 1989)). Thus, the First Amendment, which adopts a less stringent standard of review, affords less protection to an inmate's free-exercise rights than does RLUIPA: reasonableness instead of strict scrutiny. Id. The court affords DePaola the benefit of RLUIPA's more rigorous scrutiny, and, to the extent DePaola's claims fail under RLUIPA, they also fail under the First Amendment.

of a "substantial burden." He does not assert that his religious exercise was so encumbered that he was forced to modify or abandon his religious beliefs. To the contrary, DePaola claims he has remained a devout Muslim and has not alleged any problems with receiving the Eid-ul-Adha feast since 2011. Similarly, DePaola has not plausibly shown that not receiving the Christmas feast has caused a substantial burden to his religious exercise and, indeed, to receive it would violate DePaola's other religious beliefs because it is not prepared in conformance with common fare requirements.

**B.**

DePaola also claims Defendants violated his Fourteenth Amendment right to equal protection by denying him the Christmas feast meal. Because Defendants have not treated DePaola differently from similarly situated individuals, his equal protection claim also fails.

The Equal Protection Clause of the Fourteenth Amendment provides "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. The Equal Protection Clause keeps governmental decisionmakers from treating differently persons who are in all relevant aspects alike. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). In order to state a claim for a violation of the Equal Protection Clause, a plaintiff must demonstrate that he has been treated differently from other similarly situated parties and that the disparate treatment was a product of purposeful discrimination. Morrison, 239 F.3d at 654 (citing City of Cleburne, 473 U.S. at 440); see also Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003) ("Though a valid claim for a violation of equal protection need not allege discrimination as the defendant's sole motive, it must allege the requisite discriminatory intent with more than mere conclusory assertions."). Only once this showing is made should a court proceed to determine whether the

disparate treatment can be justified under the requisite level of scrutiny. Id. While a prisoner does not forfeit his constitutional right to equal protection by having been convicted of a crime and imprisoned, prisoner claims under the Equal Protection Clause must be analyzed in light of the special security and management concerns in the prison system. See Morrison, 239 F.3d at 655 (citing Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 136 (1977)).

DePaola complains that Red Onion serves the two Muslim feast meals to all inmates, but does not serve the Christmas feast meal (which consists of the same food items) to inmates receiving common fare. DePaola's claim, however, improperly identifies those with whom he is similarly situated. He has requested and receives a specific religious diet, and it is on that basis that Defendants deny all common fare participants the Christmas feast. The court finds that for purposes of DePaola's claim, he is "in all relevant respects alike" and similarly situated to inmates participating in the common fare program, not the entire inmate population. DePaola has not alleged that other common fare participants receive the Christmas feast, and the equal protection clause does not entitle him to special treatment relative to those similarly situated inmates. Having failed to show disparate treatment, DePaola also fails to plausibly allege any purposeful, intentional discrimination beyond the conclusory assertion that all inmates are not offered all feast meals and, therefore, has not on any basis made the requisite showing to raise a cognizable equal protection claim.

### III.

For the foregoing reasons, the court grants Defendants' motion for summary judgment as to the two feast meal claims. The court, after a careful review of the record, directs the Defendants to reply to the claims regarding the PPD test and the common fare diet, noting particularly it is unclear whether DePaola ever notified Red Onion of his alleged Nation of Islam

dietary needs and how such needs differ from Muslim dietary requirements.  The court will take those remaining claims under advisement pending Defendants' reply.[12]

**ENTER**:  This 20th day of December, 2013.

                                                /s/ Samuel G. Wilson
                                                United States District Judge

---

[12] Even if RLUIPA does not entangle prison administrators and ultimately the court in religion, its demanding strictures seem to have entangled the court in prison administration. See Madison v. Riter, 355 F.3d 310 (4th Cir. 2003).