CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 0 2 2014

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| ERIC J. DEPAOLA, | ) | Civil Action No. 7:12-cv-00592 |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| VIRGINIA DEPARTMENT | ) | |
| OF CORRECTIONS, *et al.*, | ) | **By: Samuel G. Wilson** |
| **Defendants.** | ) | **United States District Judge** |

This is an action pursuant to 42 U.S.C. § 1983 by plaintiff, Eric J. DePaola, an inmate at Red Onion State Prison ("Red Onion") proceeding *pro se*, against the Virginia Department of Corrections ("VDOC") and ten of its employees,[1] alleging they violated his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1 *et seq.* and the First Amendment by subjecting him to a tuberculosis screening test (also known as a purified protein derivative test or hereinafter "PPD test") and refusing to provide a diet that conforms to his religious beliefs. This matter is before the court on the defendants' supplemental motion for summary judgment. For the reasons that follow, the court grants the defendants' motion as to the PPD test claim and refers the diet claim to the magistrate.

I.

The court gave a detailed recitation of DePaola's claims in a memorandum opinion and order dated December 20, 2013 and need not do so again here. (Memorandum Op., ECF 25) In that opinion, the court granted the defendants' motion for summary judgment as to two of

---

[1] Harold Clarke, Director of VDOC; W. P. Rogers, Field Operations Manager for VDOC; Mark Engelke, Director of Food Service for VDOC; John Garman, former Regional Director for the Western Region of the VDOC; George Hinkle, Regional Administrator for the Western Region of the VDOC; Tracy Ray, former Warden at ROSP; Randall Mathena, Warden at ROSP; Linda Shear, Dietitian for VDOC; James Wade, former Food Operations Director at ROSP; and P. Scarberry, Food Operations Director at ROSP.

DePaola's claims and directed the defendants to respond to DePaola's claims regarding the PPD test and his diet. At the court's direction, the defendants have filed a supplemental motion for summary judgment with supporting affidavits and exhibits.

DePaola, a member of the Nation of Islam, objects to ROSP's policy requiring him to submit to a PPD test "due to the substances contained within [the] injection serum," which he asserts includes "alcohols and/or other substances which are toxic," and he "feels are not in conformance with his religious beliefs." (Compl. at 6, ECF 1; Pl. Declaration at 4, ECF 23-1) DePaola later indicated that he objects to phenol, one of the chemicals in the PPD injection serum. In support of their motion the defendants submitted an affidavit from S. Gronert, Ph.D., the Chairman of the Chemistry Department at Virginia Commonwealth University, who explains that there is "nothing in the [PPD test] solutions that would be classified as an alcohol" under the definition promulgated by the International Union of Pure and Applied Chemists. (Gronert Aff. at 1-2, ECF 31-3) Dr. Gronert further states that "alcohol," in layman's terms, is actually ethyl alcohol, which does not share the same chemical composition as phenol.[2] (Id.) In response, DePaola abandons his argument that phenol is an alcohol, but still contends that phenol is a toxic substance, a contention he supports with an exhibit copied from an unknown source that indicates various ways in which "long-term or repeated exposure" to phenol may have "harmful effects." (Pl. Exhibit 5, ECF 34-1) Beyond that, DePaola does not dispute Dr. Gronert's analysis.

---

[2]The defendants also cite an affidavit from Mark S. Amonette, M.D., the VDOC Medical Director, who states that VDOC's purpose for administering the PPD test is to identify offenders with latent TB, which can develop into active disease and then spread throughout the inmate population. (Amonette Aff. at 2, ECF 31-4) The PPD test allows VDOC facilities to treat an offender's latent TB before the infection becomes active. (Id.) As for other testing options, X-rays and sputum cultures "are of no value in identifying patients with Latent TB." (Id.) Other than the PPD test, blood testing is the only other screening mechanism for latent TB, and Dr. Amonette asserts "it is not feasible for mass screening and would be cost prohibitive." (Id.)

DePaola also claims that ROSP fails to offer a diet that conforms to his Nation of Islam dietary restrictions, which he asserts are different from the requirements of other Muslim sects. Although the defendants submitted affidavits, their evidence did not address whether or not Nation of Islam dietary requirements are different from other Muslim sects, whether accommodating those requirements would be feasible and nutritionally adequate, the ultimate cost of altering the common fare menu, or the potential cost of conforming to dietary requirements of potentially numerous religions.[3]

## II.

DePaola alleges that by subjecting him to the PPD test which contains substances that his religion proscribes, the defendants violated his rights under RLUIPA and the First Amendment.[4] Finding DePaola has not shown a genuine dispute of material fact as to whether subjecting him

---

[3] DePaola also complains that "on several occasions" he received rotten fruits and vegetables, molded bread, and inadequate portions of certain foods, (Compl. at 4-5, ECF 1), and he generally complains about unsanitary food trays being transported on unrefrigerated carts and officers failing to change their gloves after touching unsanitary surfaces. (Id.) The defendants respond by citing affidavit evidence that "fruits and vegetables are thoroughly scrubbed with a vegetable brush and cleaned in water, with two to five rinses" and "foods that are not suitable for serving due to age or mold are disposed of." (Scarberry Aff. at 2, ECF 31-1) The common fare food line is "routinely inspect[ed] . . . to ensure compliance with established guidelines." (Id.) ROSP uses sanitization procedures, keeps common fare trays separate from general population trays, uses premeasured ladles to ensure proper food portions, and monitors food temperatures. (Id.)

[4] RLUIPA "incorporates" the free exercise clause of the First Amendment, and DePaola's burden to state a claim under the First Amendment is very similar to his burden under RLUIPA. Lovelace v. Lee, 472 F.3d 174, 198-99, n.8 (4th Cir. 2006); Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). Contrary to the level of scrutiny under RLUIPA, for First Amendment purposes, a prisoner's free-exercise rights may be restricted to the extent that prison policy is "reasonably adapted to achieving a legitimate penological objective." Lovelace, 472 F.3d at 200. Thus, the First Amendment, which adopts a less stringent standard of review, affords less protection to an inmate's free-exercise rights than does RLUIPA: reasonableness instead of strict scrutiny. Id. The court affords DePaola the benefit of RLUIPA's more rigorous scrutiny and to the extent DePaola's claims fail under RLUIPA, they also fail under the First Amendment.

to a PPD test constitutes an actual burden on his exercise of religion, the court will grant the

defendants summary judgment motion as to that claim.[5]

RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that the imposition of the burden on that person is . . . (1) in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). The plaintiff bears the initial burden of showing a substantial burden

on his religious exercise. 42 U.S.C. § 2000cc-2(b); Lovelace v. Lee, 472 F.3d 174, 185-87 (4th

Cir. 2006). "[A] substantial burden on religious exercise occurs when a state or local

government . . . 'put[s] substantial pressure on the adherent to modify his religious behavior and

significantly violate his beliefs.'" Lovelace, 472 F.3d at 187. A burden that is merely an

"inconvenience on religious exercise" is not "substantial." Konikov v. Orange County, Florida,

410 F.3d 1317, 1323 (11th Cir. 2005). See also Lovelace, 472 F.3d. at 194 (holding RLUIPA

does not reach negligent violations of inmates' religious practices, as "[a]doption of the

negligence standard would open prison officials to unprecedented liability for burdening an

inmate's religious exercise"); Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d

752, 761 (7th Cir. 2003) (recognizing that RLUIPA was not meant to create a cause of action for

---

[5] On summary judgment, the court views facts and draws inferences in the light most favorable to the party opposing the motion, see Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), however the court need not treat a complaint's legal conclusions as true. See, e.g., Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996) (stating a court need not accept plaintiff's "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations") (internal quotations and citations omitted). The court should grant summary judgment when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

every decision that constrains religious exercise, or the word "substantial" would be meaningless). Once a prisoner establishes a substantial burden on his religious exercise, the defendants must show that the policy is the least restrictive means of furthering a compelling governmental interest. Lovelace, 472 F.3d. at 189. The court will "not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety" and will instead apply RLUIPA "in an appropriately balanced way." Cutter v. Wilkinson, 544 U.S. 709, 711, 722 (2005).

DePaola has marshaled nothing to support his claim that the injection of the PPD test solution violates his religious principles. Initially, DePaola could not even point to a particular substance in the PPD test serum that would violate his beliefs. DePaola later cited an unknown source indicating that large quantities of phenol, one of the substances in the PPD serum, may be harmful. DePaola claims his religion proscribes "alcohols and/or other substances which are toxic," but he provides no evidence to contest Dr. Gronert's conclusion that nothing in the PPD solution could be classified as an alcohol or to suggest that the amount of phenol in the PPD serum is toxic. Given that none of DePaola's submissions support his factual claim that submitting to a PPD test violates his religious principles, the court finds that he has not met his burden of showing the testing imposes a substantial burden on his religious exercise in violation of RLUIPA and the First Amendment.[6] The court will accordingly grant the defendants' summary judgment motion as to this claim.

_____

[6] Although the court has decided this claim on the ground that requiring DePaola to submit to the PPD test does not violate RLUIPA because it does not substantially burden his religious exercise, the defendants have also likely met their burden of showing that the PPD test is the least restrictive means of furthering a compelling government interest. According to the uncontradicted evidence, the PPD test is the only feasible means of screening for latent tuberculosis in order to eliminate the infection before it becomes active and can spread to other inmates. As this court has previously recognized, tuberculosis testing implicates important

III.

DePaola also maintains that the defendants' failure to provide a diet that complies with Nation of Islam dietary restrictions violates his religious principles, but it is impossible to discern from the current record whether there are differences between the dietary requirements of Nation of Islam and other Muslim sects and, if so, whether the common fare diet is nonetheless sufficient. The defendants also fail to indicate whether accommodating Nation of Islam dietary requirements would be feasible and nutritionally adequate, the cost of altering the common fare menu to accommodate DePaola's alleged religious needs, or the potential cost of accommodating numerous strands of religious dietary restrictions.[7] The court will accordingly refer this claim to the magistrate with the responsibility of determining these matters and, if necessary, holding an evidentiary hearing to resolve any material factual disputes.[8]

---

concerns regarding the safety of inmates and prison staff and this is just the sort of prison determination to which courts should defer. Canada v. Ray, No. 7:08-cv-00219, 2011 WL 565611 (W.D. Va. Feb. 9, 2011).

[7] This court has previously held that "the administrative decision to standardize accommodation of inmates' religious dietary needs throughout the VDOC . . . is just the kind of prison policy-making determination to which courts must defer." Lovelace v. Bassett, 7:07-cv-00506, 2009 WL 3157367, at *8 (W.D. Va. Sept. 29, 2009).

[8] The court will dismiss DePaola's other food-related claims, as he fails to show that ROSP food quantity, quality, preparation, and handling put "substantial pressure" on him "to modify his behavior and to violate his beliefs" so as to place a substantial burden on his religious exercise. Lovelace, 472 F.3d at 187. See also, Talbert v. Jabe, 7:07-cv-00450, 2007 WL 3339314 (W.D. Va. Nov. 8, 2007); Acoolla v. Angelone, et al., Civil Action No. 7:01-cv-01008, slip op. at 18 n. 13 (W.D. Va. September 1, 2006) (rejecting bald assertion that VDOC's practice of sanitizing food trays did not remove all food traces); Frazier v. Ferguson, Civil Action No. 04-5140, slip op., 2006 WL 2052421, at *4 (W.D. Ark. 2006) (finding, under RLUIPA, no substantial burden on Seventh-day Adventist inmate who had to discard some items from proffered vegetarian diet that were at odds with his religious vegan diet); Kretchmar v. Beard, Civil Action No. 05-6108, slip op., 2006 WL 20386887, at * 5 (E.D. Pa. 2006) (finding no RLUIPA or First Amendment violation for inmate who received kosher diet that was nutritionally sufficient, though food items were repetitious and cold), aff'd, Third Cir. Case No. 06-4039, slip op., 2007 WL 2050878 (July 18, 2007).

IV.

For these reasons, the court will grant the defendants' motion for summary judgment as to the PPD claim and will refer the diet claim to the magistrate.

**ENTER**: May 2, 2014.

_____
UNITED STATES DISTRICT JUDGE