IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **ERIC J. DePAOLA,** ) | |
| ) | |
| Plaintiff, ) | Case No. 7:12CV00592 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **VIRGINIA DEPARTMENT OF** ) | By: James P. Jones |
| **CORRECTIONS, ET AL.,** ) | United States District Judge |
| ) | |
| Defendants. ) | |

*Eric J. DePaola, Pro Se Plaintiff; J. Michael Parsons, Assistant Attorney General, Office of the Attorney General of Virginia, Richmond, Virginia, for Defendants.*

This is a civil action by Eric J. DePaola, an inmate at Red Onion State Prison ("Red Onion"), proceeding pro se against the Virginia Department of Corrections ("VDOC") and ten VDOC employees in their individual and official capacities,[1] pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et seq.*, and 42 U.S.C. § 1983. In previous rulings, the court has granted summary judgment as to almost all of DePaola's contentions. The remaining claim now before me alleges that the VDOC common fare diet includes foods that are inconsistent with DePaola's particular religious dietary

---

[1] The defendants are Harold Clarke, VDOC director; W. P. Rogers, an assistant director of operations; Mark Engelke, VDOC food service director; Linda Shear, VDOC dietician; John Garman and George Hinkle, regional directors; Tracy Ray and Randall Mathena, Red Onion wardens; and James Wade and P. Scarberry, Red Onion food service directors.

requirements. After review of the record, I find the defendants are entitled to summary judgment.[2]

---

[2] The procedural history of the case is as follows. In response to the Complaint, the defendants moved for summary judgment supported by affidavits. The court notified DePaola that if he failed to respond with affidavits or other evidence, summary judgment might be granted for defendants, as required under *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). DePaola filed a response to the motion with his affidavit attached. The court took the defendants' motion under advisement, noting that from the parties' submissions, it was unclear whether DePaola had informed officials of the religious dietary restrictions before filing this lawsuit and, if so, whether officials attempted to accommodate his beliefs.

Defendants filed a supplement to their motion for summary judgment with additional affidavits. Again, the court notified DePaola of the motion and he filed a response with attached documentation. The court then found that the defendants' evidence

> did not address whether or not Nation of Islam dietary requirements are different from other Muslim sects, whether accommodating those requirements would be feasible and nutritionally adequate, the ultimate cost of altering the common fare menu, or the potential cost of conforming to dietary requirements of potentially numerous religions.

(Mem. Opinion 3, May 2, 2014, ECF No. 35.) At this point, the case was transferred to me. I ordered the defendants "to supplement their Motion for Summary Judgment by providing evidence in the form of affidavits and/or declarations under oath relevant to these questions." (Order 1-2, May 7, 2014, ECF No. 40.) I granted plaintiff 14 days in which to file any response to the defendants' supplement and granted the defendants 7 days to file a reply. The defendants filed a another supplement to the Motion for Summary Judgment with additional affidavits. Although DePaola has chosen not to file any further reply, the court has provided him with ample notice of his opportunity to do so.

I

DePaola alleges that he has been a practicing Muslim for over five years and had been following the teachings of the Nation of Islam ("NOI") for approximately three years. At his request, based on these beliefs, Red Onion officials have served him a common fare diet since September of 2011.

Mark Engelke, VDOC food service director, states in his affidavit that the common fare diet is designed to meet the dietary needs of inmates who, for religious reasons, require a Kosher, non-pork diet and whose dietary requirements cannot be accommodated with foods provided by the VDOC's regular menu. He states that common fare menu has been certified by the Islamic Center of Virginia as complying with Islamic dietary guidelines and by dieticians as meeting or exceeding minimum daily nutritional requirements. To be approved to receive the common fare menu instead of the regular VDOC menu, an inmate must demonstrate and sign an agreement stating that the common fare menu meets his religious dietary needs. DePaola signed such an agreement.[3]

DePaola now asserts that common fare meals are inconsistent with his religious dietary beliefs. He states that his NOI religious dietary requirements differ from those of other Muslim sects and require him to eat 100% whole grain

---

[3] The agreement states, in pertinent part: "I agree to participate in the Common Fare program. This program provides me with an appropriate religious diet that meets or exceeds minimum daily nutritional requirements." (Engelke Aff. Ex. A, ECF No. 20.)

-3-

wheat bread, not white bread, no peanut products, no cottage cheese, no grapefruit, no white rice, and no peas.[4] The common fare meals include these prohibited items. DePaola claims that cottage cheese contains Polysorbate 80, which is allegedly comprised of acids and alcohols that Muslims are forbidden to eat. He also offers evidence that a beef-flavored rice and vegetable entrée often included in his common fare meals lists peas as an ingredient.

Engelke states that the VDOC houses inmates of various Muslim sects, including NOI, Sunni Muslims, Shiite Muslims, the World Community of Islam, and Moorish Science Temple. He agrees that within the NOI community, inmates espouse differing dietary beliefs. For example, he states that some NOI inmates eat fish, while others do not, and some NOI inmates claim that their beliefs require them to eat only one meal per day, while others eat three meals per day. Engelke explains that the centralized common fare program does not allow officials at each VDOC facility to make changes to the master menu or to provide substitutions for

---

[4] In October 2011, DePaola filed a grievance complaining that the common fair meals at Red Onion included white bread, peanut butter, cottage cheese, grapefruit, and white rice — food items he claimed were inconsistent with Muslim teachings. Officials ruled his grievance unfounded, because the meals followed the VDOC common fare master menu, and this finding was upheld on appeal. The defendants do not argue that DePaola failed to exhaust his administrative remedies with regard to any of his complaints about the diet. *See* 42 U.S.C. § 1997e(a).

-4-

Case 7:12-cv-00592-JPJ-RSB   Document 43   Filed 08/12/14   Page 4 of 14   Pageid#: 316

food items on the menu in order to meet such individualized NOI dietary practices.[5]

In fact, the VDOC Food Service manual expressly states that "[t]he planned Common Fare menu may not be changed at the facility level, except where seasonal availability of produce items warrants that substitutions be made." (Engelke Aff. Ex. B, at 2, ECF No. 20.) The common fare program requires meal trays to be pre-made to meet nutritional and religious requirements. The defendants insist that Red Onion prepares common fare meals using only food items authorized by the common fare menu. In keeping with the policy, Red Onion officials state that they cannot provide food alternatives to satisfy DePaola's food preferences.

Defendant Scarberry explains in her submssion how DePaola's disputed food items are served under the master common fare rules. Kosher white bread, peanut butter, and grapefruit may be served at any time, except during the NOI Month of Fasting, when these items are not included on the menu. "[P]eas and dried beans, with the exception of navy beans, [are] an unacceptable food substitute during the [NOI] Month of Fasting. The . . . entrée [which DePaola identified as containing peas] is not serve during the NOI fasting period."

---

[5] In contrast to common fare practices, the regular VDOC menu is generally served cafeteria-style. Inmates may select a meat alternative at each meal, opting instead for nonpork or vegetarian items, such as beans, dairy products, and eggs.

-5-

(Scarberry Aff. ¶ 7, ECF No. 31.) Scarberry states that brown rice, not white rice, is served in common fare meals, although the rice may appear white in color. She also provides evidence that Polysorbate 80 does not contain alcohol and states that, to the best of her knowledge, the cottage cheese in Red Onion common fare meals does not contain alcohol.

Engelke states that providing substitutes for various items authorized on the common fare menu to cater to the differing dietary beliefs of NOI offenders would require the VDOC to bear significant additional costs. He states that fluctuating requests for customized common fare meals would be unmanageable and require hiring additional food service staff. Engelke asserts that identifying the precise cost increase for such individualized NOI meals is not feasible, but would be expected to impose a significant burden on Virginia taxpayers. VDOC officials also fear that permitting NOI inmates to have meals tailored for individual religious differences within that belief set would open the door to requests from other religious subgroups for their own special adjustments to the common fare menu. Engelke predicts that allowing any group or groups to request a customized version of the common fare menu would throw "the VDOC back into the same overly burdensome predicament [it] faced before" offering the common fare diet. (Engelke Aff. ¶10, ECF No. 41.) Presently, approximately 3,000 Virginia inmates participate in the common fare meal program.

-6-

Case 7:12-cv-00592-JPJ-RSB   Document 43   Filed 08/12/14   Page 6 of 14   Pageid#: 318

According to DePaola, because he has not eaten the items he claims are prohibited by his beliefs, he has suffered physically from hunger pangs, has had difficulty sustaining his weight, and has suffered in his spiritual practice from not having a proper religious diet. He seeks declaratory, injunctive, and monetary relief.[6]

## II.

DePaola claims that the defendants have violated his rights under the First Amendment and RLUIPA to be free from a substantial burden on his religious exercise by failing to provide common fare meals consistent with his personal NOI dietary beliefs. I find that DePaola, who has the burden of proof, has not established any genuine dispute as to any material fact and that the defendants are entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

---

[6] DePaola also apparently seeks to enforce decades-old court orders from cases filed in 1981 and 1986, directing various VDOC facilities to provide the prisoner plaintiffs with a diet consistent with their NOI religious practices. *See, e.g.*, *Brown v. Sielaff*, No. 81-0853-R (E.D. Va.); *Lee X v. Murray*, No. 6:86CV00082 (W.D. Va.). These cases predate the federal courts' electronic filing system and the paper case files have long since been archived. DePaola submits a photocopy of an order purportedly issued in the *Brown* case, which expressly states that it applies only to "prisoners presently confined at the Mecklenburg Correctional Center and to all of the named plaintiffs." (MSJ Resp. Ex. D ¶19, ECF No. 23.) DePaola offers no indication that he is a member of this group. Moreover, these court cases arose under far different circumstances — before the VDOC's establishment of the common fare program as a centralized means of accommodating VDOC inmates' religious dietary rights. For these reasons, these cases do not provide any legal or factual basis upon which DePaola is entitled to a customized religious diet and thus have no bearing on DePaola's present claims under the Constitution and RLUIPA.

-7-

RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that the imposition of the burden on that person is . . . (1) in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). The plaintiff bears the initial burden of showing a substantial burden on his religious exercise. § 2000cc-2(b); *Lovelace v. Lee*, 472 F.3d 174, 185-87 (4th Cir. 2006). "[A] substantial burden on religious exercise occurs when a state or local government . . . 'put [s] substantial pressure on the adherent to modify his religious behavior and significantly violate his beliefs.'" *Id.* at 187. A burden that is merely an "inconvenience on religious exercise" is not "substantial."[7] *Konikov v. Orange Cnty., Fla.,* 410 F.3d 1317, 1323 (11th Cir. 2005). RLUIPA also does not reach negligent violations of inmates' religious practices. *Lovelace*, 472 F.3d. at 194.

---

[7] RLUIPA "incorporates" the free exercise clause of the First Amendment, and DePaola's burden to state a claim under the First Amendment is very similar to his burden under RLUIPA. *Lovelace,* 472 F.3d at 198-99, n. 8; *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989). Contrary to the level of scrutiny under RLUIPA, for First Amendment purposes, a prisoner's free-exercise rights may be restricted to the extent that prison policy is "reasonably adapted to achieving a legitimate penological objective." *Lovelace*, 472 F.3d at 200. Thus, the First Amendment, which adopts a less stringent standard of review, affords less protection to an inmate's free-exercise rights than does RLUIPA: reasonableness instead of strict scrutiny. *Id.* I will afford DePaola the benefit of RLUIPA's more rigorous scrutiny and to the extent DePaola's claims fail under RLUIPA, they also fail under the First Amendment.

Once a prisoner establishes a substantial burden on his religious exercise, the defendants must show that the policy is the least restrictive means of furthering a compelling governmental interest. *Id.* at 189. The court will "not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety" and will instead apply RLUIPA "in an appropriately balanced way." *Cutter v. Wilkinson*, 544 U.S. 709, 711, 722 (2005). The court must give due deference to officials' sworn affidavits explaining why a policy is the least restrictive means to further compelling interests such as "good order, security and discipline, consistent with consideration of costs and limited resources." *Id.* at 723.

Taking the evidence in the light most favorable to DePaola, I find that he has marshaled nothing to support his claim that his desire to avoid eating white bread, peanut products, grapefruit, cottage cheese, and peas is based on a sincerely held religious belief rather than a merely secular, personal preference. It is undisputed that the manner in which Red Onion serves these foods on the common fare menu has been approved by the Islamic leader of the Islamic Center of Virginia as complying with Islamic dietary guidelines. NOI is a sect of Islam, and DePaola himself requested and then agreed to follow the common fare diet as consistent with his NOI beliefs. Thus, the record reflects that the VDOC common fare menu substantially accommodates his religious dietary needs. DePaola offers no NOI

religious text or teaching on which he grounds his later stated preference to avoid the specified foods at all times. His personal food preferences, not grounded in sincere religious convictions, are not a religious exercise protected under RLUIPA.

DePaola also fails to show that the food items he does not want to eat comprise a substantial portion of the nutrients and calories in the common fare meals he receives.[8] For example, the weekly common fare menu for April 2013 through March 2014 lists peanut butter for three meals, cottage cheese for three meals, and the beef-flavored entrée that includes peas for two meals. This menu lists fruit for every meal, but does not list grapefruit for any meal. DePaola also does not contest the defendants' evidence that no white rice is served on the common fare menu or that no peas are served on the menu, other than those contained in the occasionally served, beef-flavored, entrée. While DePaola asserts that he feels hungry and sometimes loses weight eating only the portions of the common fare menu that meet his stated preferences, he does not allege any resulting medical concerns that have caused him to seek treatment. Without proof

---

[8] *See, e.g.*, *Couch v. Jabe*, 479 F. Supp. 2d 569, 589 (W.D. Va. 2006) (denying motion to dismiss because "a reasonable jury could find that inmates participating in the [Ramadan] fast in 2004, receiving only 1000 daily calories, were substantially pressured to break the fast in violation of Islamic tenets, in order to satisfy their physical hunger").

that the common fare menu substantially burdens his religious practice, DePaola's RLUIPA claim fails.[9]

I also conclude that the defendants' evidence supports a finding that the common fare program as currently operated furthers compelling state interests by the least restrictive means and thus defeats the second element of DePaola's RLUIPA challenge regarding his religious diet. The defendants' affidavits reflect that VDOC administrators have undertaken substantial effort to design and implement a single, centralized common fare program that is certified by experts in religion and dieticians to accommodate Muslim inmates' dietary beliefs and nutritional needs. I find it self-evident that this centralized menu furthers legitimate and neutral VDOC interests in cost-efficient, uniform procedures by which to accommodate inmates' religious dietary beliefs properly at numerous facilities in the VDOC system.

To accommodate NOI inmates' differing dietary beliefs, the VDOC would either have to design multiple common fare master menus or allow food service personnel at the institutional level to determine substitutions of common fare's authorized food items for items consistent with NOI inmates' individual religious

---

[9] *See, e.g., Frazier v. Ferguson*, No. 04-5140, 2006 WL 2052421, at *4 (W.D. Ark. July 21, 2006) (finding, under RLUIPA, no substantial burden on Seventh-day Adventist inmate who had to discard some items from proffered vegetarian diet that were at odds with his religious vegan diet).

dietary beliefs. The defendants state that these options would be both unworkable and prohibitively expensive. They predict from past experience, before implementation of the common fare program, that allowing ad hoc adjustments to the master menu at each institution would create a potential for inconsistent interpretations and accommodations of inmates' religious dietary needs, as well as uncertainty that each inmate's personalized version of the diet provided necessary nutrients and calories. While multiple master menus would offer consistency, the defendants predict that formulating an alternate menu for one set of NOI dietary beliefs would lead to requests for similar exceptions for inmates of other NOI and Muslim sects and lead to exponential increases in cost and operational complications. DePaola has not offered any less burdensome alternative to the single, centralized common fare program that would accomplish the legitimate goal of uniform accommodation of inmates' religious and nutritional needs. As I have written before, "[t]he administrative decision to standardize accommodation of inmates' religious dietary needs throughout the VDOC . . . is just the kind of prison policy-making determination to which courts must defer." *Lovelace v. Bassett*, No. 7:07CV00506, 2009 WL 3157367, at *8 (W.D .Va. Sept. 29, 2009).

III.

For the stated reasons, I conclude that DePaola has failed to submit evidence that the VDOC's current accommodation of inmates' NOI beliefs through the

common fare program substantially burdens his sincere religious beliefs, while the defendants' evidence supports a finding that the current system furthers compelling state interests by the least restrictive means.[10] Accordingly, it is **ORDERED** that the defendants' Supplemental Motion for Summary Judgment (ECF No. 30) is GRANTED.

---

[10] The defendants also assert that DePaola's claims for monetary damages under § 1983 are barred by qualified immunity, and I agree.

Qualified immunity protects defendants performing discretionary functions from liability for civil damages so long as their conduct does not violate a clearly established constitutional or statutory right of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . [I]n the light of preexisting law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citations omitted).

Based on the Islamic Center's certification that the common fare menu accommodates Muslim dietary beliefs and a dirth of legal precedent requiring prison officials to meet every inmate's every personal religious dietary preference, a reasonable VDOC official would have believed that the diet provided to DePaola did not substantially burden his NOI dietary beliefs. Therefore, they enjoy qualified immunity.

Moreover, DePaola does not state facts on which a reasonable factfinder could conclude that defendants Clarke, Garman, Hinkle, Ray, Mathena, Wade, or Scarberry had any personal involvement in setting the common fare master menu or would be involved in determining whether that master menu should be altered to improve its accommodation of inmates' religious beliefs. Accordingly, he has failed to state actionable § 1983 claims against these individuals. I also note that DePaola has stated no facts to support any actionable claim for monetary damages under RLUIPA. *See Sossamon v. Texas*, 131 S. Ct. 1651, 1660 (2011); *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009).

Case 7:12-cv-00592-JPJ-RSB   Document 43   Filed 08/12/14   Page 13 of 14   Pageid#: 325

A separate Judgment in favor of the defendants will be entered forthwith, ending this case.

                                        ENTER: August 12, 2014

                                        /s/ James P. Jones
                                        United States District Judge