IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **ERIC J. DePAOLA,** | ) |
| Plaintiff, | ) Case No. 7:12CV00592 |
| v. | ) **OPINION AND ORDER** |
| **VIRGINIA DEPARTMENT OF CORRECTIONS, ET AL.,** | ) By: James P. Jones<br>) United States District Judge |
| Defendants. | ) |

*Eric J. DePaola*, Pro Se Plaintiff; *J. Michael Parsons, Assistant Attorney General, Office of the Attorney General of Virginia, Richmond, Virginia*, for Defendants.

This closed civil action is before me on plaintiff Eric J. DePaola's motion under Rule 60(b) of the Federal Rules of Civil Procedure. After review of the record, I conclude that DePaola's motion must be denied.

I.

DePaola, an inmate at Virginia's Red Onion State Prison ("Red Onion") proceeding pro se, filed this action under 42 U.S.C. § 1983 against the Virginia Department of Corrections ("VDOC") and a number of its employees. When the case was transferred to me in May 2014, the only remaining claim was DePaola's allegation that the VDOC Common Fare diet includes foods that are inconsistent with his particular religious dietary requirements, in violation of his rights under

the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §2000cc-1, et seq., and the First Amendment.

In a previous opinion, the court had noted:

> [I]t is impossible to discern from the current record whether there are differences between the dietary requirements of Nation of Islam and other Muslim sects and, if so, whether the common fare diet is nonetheless sufficient. The defendants also fail to indicate whether accommodating Nation of Islam dietary requirements would be feasible and nutritionally adequate, the cost of altering the common fare menu to accommodate DePaola's alleged religious needs, or the potential cost of accommodating numerous strands of religious dietary restrictions.

(Op. 6, May 2, 2014, ECF No. 35 (footnote omitted).) I directed the defendants to supplement their motion by May 21, 2014, and directed DePaola to file any response within 14 days thereafter. The defendants filed their supplemental motion, but the court did not receive any additional response from DePaola. Some weeks later, I considered the evidence in the record and entered judgment for the defendants. *DePaola v. Va. Dep't of Corr.*, No. 7:12CV00592, 2014 WL 3956108 (W.D. Va. Aug. 12, 2014). No notice of appeal was filed.

Three months after the case closed, DePaola filed his present motion. The record now indicates that in June 2014, DePaola mailed a response to the defendants' May 2014 supplement; the defendants received his response, but the court did not, because DePaola addressed it to the court's prior post office box, which had been discontinued. When the copy of the response intended for the

court was returned to DePaola as undeliverable, he remailed the response and a motion asking for it to be considered timely filed to the court, again addressed to the discontinued post office box. After DePaola received his copy of the Opinion and Order granting summary judgment for the defendants in August 2014, he took no action to appeal or challenge this ruling. When the post office again returned the response to DePaola as undeliverable, he threw the documents away.

In November 2014, after DePaola learned the court's correct street address, he filed his present Rule 60(b) motion. He asserted that because he was never notified of the court's address change, I should vacate my ruling for the defendants and reconsider their Motion for Summary Judgment in light of DePaola's supplemental response. I took DePaola's motion under advisement and directed the defendants to respond and to provide a copy of DePaola's June 2014 summary judgment response, which they did. DePaola then filed a reply brief, making the matter ripe for consideration.

II.

Rule 60(b) specifies the limited reasons that a district court may "relieve a party . . . from a final judgment." These grounds are:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

-3-

> (3) fraud . . . , misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

DePaola does not state facts seeking relief from judgment under subsections (2), (3), (4), or (5). The only relevant subsections here are "mistake, inadvertence, . . . or excusable neglect" under subsection (1) or "any other reason that justifies relief" under subsection (6).

As a threshold issue, however, a movant seeking relief under any subsection of Rule 60(b) must first demonstrate that the motion is timely, that he has a meritorious claim or defense, that the opposing party will not suffer unfair prejudice by having the judgment set aside, and that exceptional circumstances warrant relief from the judgment. *See Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 412 n.12 (4th Cir. 2010). Only if the movant meets these threshold conditions will the court determine whether the movant has satisfied "one of the six enumerated grounds for relief under Rule 60(b)." *Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 266 (4th Cir. 1993).

The defendants argue that because DePaola has not demonstrated in his motion that he has a meritorious claim on summary judgment, he is not entitled to relief under Rule 60(b). I agree.

III.

It is undisputed that DePaola signed a VDOC Common Fare diet agreement in December 2007, stating that this diet was consistent with his Muslim religious beliefs at that time. Sometime in 2009, DePaola adopted the beliefs of the Nation of Islam ('NOI'), a sect of the Muslim faith. He filed this lawsuit in December 2012, complaining that the VDOC Common Fare diet includes foods that his NOI beliefs prohibit: white bread (as opposed to the 100% whole wheat bread allegedly required by NOI beliefs), peanut products, cottage cheese (if it contains alcohol), grapefruit, white rice, and peas. He claimed that he was forced to choose between eating Common Fare meals and violating his beliefs or complying with his religious dietary beliefs and foregoing numerous food items, which left him without sufficient calories. DePaola asserted that this situation violated his rights under RLUIPA and the First Amendment, and claimed that Red Onion officials should provide him with a diet consistent with his NOI beliefs.

RLUIPA provides that:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person --

>(1) is in furtherance of a compelling governmental interest; and

>(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).[1] The plaintiff must first show a substantial burden on his exercise of sincerely held religious beliefs. § 2000cc-2(b); *Lovelace v. Lee*, 472 F.3d 174, 185-87 (4th Cir. 2006). "[A] substantial burden on religious exercise occurs when a state or local government . . . put[s] substantial pressure on the adherent to modify his behavior and to violate his beliefs." *Id.* at 187 (internal quotation marks, citation, and footnote omitted).

If the inmate demonstrates that a policy places a substantial burden on his religious practice, the defendants must then show that the policy is the least restrictive means of furthering a compelling governmental interest. *Id.* at 189. I must give due deference to officials' sworn affidavits explaining why a policy is the least restrictive means to further compelling penological interests such as "good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005) (internal quotation marks, citation, and footnote omitted).

In granting summary judgment for the defendants, I found that DePaola had not demonstrated a religious basis for his desire to avoid the specified foods or

---

[1] As in my prior opinion, I will address DePaola's claims under RLUIPA, because if they fail under the more rigorous RLUIPA standard, they also fail under the First Amendment. *DePaola*, 2014 WL 3956108, at *3 n.7.

shown that the current Common Fare diet substantially burdened his religious practice. *DePaola*, 2014 WL 3956108, at *3-4. In his supplemental response, DePaola asserts that the NOI diet he espouses is set forth in *How to Eat to Live*, an NOI text by Elijah Muhammad. DePaola also offers some facts to support his contention that the NOI-prohibited food items on the Common Fare menu constitute a substantial percentage of the total calories on that menu, such that omitting these items leaves him without sufficient nutrients. Based on this evidence, DePaola asserts that he has met his initial burden under RLUIPA. Even if I so found, however, DePaola is not entitled to relief under Rule 60(b), because he fails to present a meritorious defense to the defendants' evidence that the current, centralized Common Fare menu is the least restrictive means of furthering compelling penological interests.

In my prior opinion, based on DePaola's submissions then in the record, I stated:

> I also conclude that the defendants' evidence supports a finding that the common fare program as currently operated furthers compelling state interests by the least restrictive means and thus defeats the second element of DePaola's RLUIPA challenge regarding his religious diet. The defendants' affidavits reflect that VDOC administrators have undertaken substantial effort to design and implement a single, centralized common fare program that is certified by experts in religion and dieticians to accommodate Muslim inmates' dietary beliefs and nutritional needs. I find it self-evident that this centralized menu furthers legitimate and neutral VDOC interests in

-7-

cost-efficient, uniform procedures by which to accommodate inmates' religious dietary beliefs properly at numerous facilities in the VDOC system.

To accommodate NOI inmates' differing dietary beliefs, the VDOC would either have to design multiple common fare master menus or allow food service personnel at the institutional level to determine substitutions of common fare's authorized food items for items consistent with NOI inmates' individual religious dietary beliefs. The defendants state that these options would be both unworkable and prohibitively expensive. They predict from past experience, before implementation of the common fare program, that allowing ad hoc adjustments to the master menu at each institution would create a potential for inconsistent interpretations and accommodations of inmates' religious dietary needs, as well as uncertainty that each inmate's personalized version of the diet provided necessary nutrients and calories. While multiple master menus would offer consistency, the defendants predict that formulating an alternate menu for one set of NOI dietary beliefs would lead to requests for similar exceptions for inmates of other NOI and Muslim sects and lead to exponential increases in cost and operational complications. DePaola has not offered any less burdensome alternative to the single, centralized common fare program that would accomplish the legitimate goal of uniform accommodation of inmates' religious and nutritional needs. As I have written before, "[t]he administrative decision to standardize accommodation of inmates' religious dietary needs throughout the VDOC . . . is just the kind of prison policy-making determination to which courts must defer." *Lovelace v. Bassett*, No. 7:07CV00506, 2009 WL 3157367, at *8 (W.D. Va. Sept. 29, 2009).

*DePaola*, 2014 WL 3956108, at *4.

In his supplemental responses (ECF Nos. 45 and 49), DePaola asserts, with no documentary support or citation to any religious text, that *all* NOI inmates are required to follow the dietary tenets of *How to Eat to Live*. He admits that the

dietary practices of some NOI inmates vary, but asserts that these variations are not required. He also complains that the defendants failed to provide any particularized information about the additional costs the VDOC would incur to meet his NOI food demands. He contends, without supporting facts, that since the VDOC menu provides these foods during the NOI month of fasting once a year, it would not be overly burdensome to do so in the everyday menus as well.

DePaola's arguments are not sufficient grounds on which to alter my conclusion that the VDOC has compelling interests in achieving proper, cost-efficient accommodation of the religious dietary beliefs of the many different sects of Islamic inmates confined in VDOC prisons, as well as ensuring that their nutritional needs are met. DePaola's arguments also fail to contravene the finding that the current, centralized Common Fare menu, based on information from Islamic experts and nutrition professionals, effectively furthers the VDOC's compelling interests. He simply offers no feasible alternative to the current system. Clearly, it would not be logical or cost effective to mount changes to the master Common Fare menu, based on one NOI inmate's word alone, as DePaola demands. Moreover, making any individualized changes to the menu—by changing the master menu or allowing substitutions at the institution—would open the door to requests for similar, individualized adjustments to Common Fare meals from multiple other sects, causing exponential cost increases and other problems that the

-9-

Case 7:12-cv-00592-JPJ-RSB   Document 51   Filed 06/17/15   Page 9 of 10   Pageid#: 373

current menu was designed to minimize.  In short, I find no reason, based on DePaola's submissions, on which to grant him relief from my ruling under RLUIPA that the Common Fare program as it stands is the least restrictive means for the VDOC to further its compelling interests in cost efficient accommodation of inmates' religious dietary practices.  Accordingly, I will deny his motion.

IV.

For the reasons stated, it is **ORDERED** that DePaola's motion under Rule 60(b) (ECF No. 45) is DENIED.

ENTER: June 17, 2015

/s/  James P. Jones
United States District Judge

-10-

Case 7:12-cv-00592-JPJ-RSB   Document 51   Filed 06/17/15   Page 10 of 10   Pageid#: 374